CENTURY BANK OF CITY OF NEW YORK v. BREITBART et al.

(City Court of New York, Trial Term.   February 4, 1915.)

1. BILLS AND NOTES (§ 498*)—LIABILITY OF INDORSER—NOTICE OF DISHONOR—
STATUTES.
   Under Code Civ. Proc. § 923, providing that the notary's certificate
that he mailed a notice of dishonor to an indorser of a note shall be pre-
sumptive evidence of the facts certified, unless the indorser make affidavit
that the notice was not received, the making of such affidavit destroys the
prima facie effect of the notary's certificate that the notice was duly ad-
dressed to the indorser as required by Negotiable Instruments Law
(Consol. Laws; c. 38) § 176, providing that, when the notice is duly ad-
dressed and deposited in the post office, the sender is deemed to have
given due notice, notwithstanding any miscarriage in the mails, and the
holder of the note is put upon his common-law proof that the notice was
duly addressed.
   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1688–
1694; Dec. Dig. § 498.*]

2. BILLS AND NOTES (§ 421*)—LIABILITY OF INDORSER—NOTICE OF DISHONOR—
"DULY ADDRESSED."
   Under Negotiable Instruments Law, § 176, providing that when notice
of dishonor is duly addressed and deposited in the post office, and section
179, providing that where an address is given on the note, notice must be
sent to that address, a notice sent to any address other than the one
given on the note and which was never received was not "duly ad-
dressed," and the indorser was therefore relieved from liability on the
note.
   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1173,
1178–1187; Dec. Dig. § 421.*]

3. BILLS AND NOTES (§ 526*)—ACTIONS—SUFFICIENCY OF EVIDENCE—NOTICE
OF DISHONOR—ADDRESS.
   In an action against the maker and indorser of a note, evidence *held*
not to show that the notice of dishonor was addressed to the indorser at
the address given on the note.
   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1840–
1846; Dec. Dig. § 526.*]

4. COURTS (§ 95*)—RULES OF DECISION—DECISIONS OF OTHER STATES—CON-
STRUCTION OF UNIFORM ACT.
   In construing a provision of the uniform Negotiable Instruments Act
not previously construed by a New York court, the decision of courts of
other states which have adopted the act should be given the same author-
ity as decisions of the New York courts, in order to preserve the uni-
formity which the act was intended to secure.
   [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 322, 323; Dec.
Dig. § 95.*]

Action by the Century Bank of the City of New York against May-
lich Breitbart and Berta Breitbart on a note.  Judgment entered against
Maylich Breitbart by default, and directed in favor of the defendant
Berta Breitbart.

Joseph C. Stebbins (Arthur W. Opp, of New York City, of counsel),
for plaintiff.
Otto A. Glasberg, of New York City, for defendant indorser.

RANSOM, J.   [1] The question submitted for my determination,
without a jury, was, in substance, whether the plaintiff bank has suffi-

ciently shown that notice of protest was given to the defendant Berta Breitbart, indorser on a promissory note made and delivered by her husband, or whether she was discharged from liability as such indorser by reason of the bank's failure to give her such notice. Neg. Instr. L. § 160. In addition to an answer which put the allegation of notice in issue, the defendant Berta Breitbart served and filed an affidavit (Code Civ. Proc. § 923) denying that she had ever received·any notice of the dishonoring of the note, and she reiterated this denial upon the witness stand (Union Bank of Brooklyn v. Deshel, 123 N. Y. Supp. 585). The plaintiff bank claims that it seasonably mailed such notice to the indorser as well as to the maker, and used all diligence in notifying both. Under such circumstances, it contends that the indorser's actual nonreceipt of the notice, if found to be the fact, would be immaterial, in view of the provisions of section 176 of the Negotiable Instruments Law. State Bank v. Soloman, 84 N. Y. Supp. 976; Feigenspan v. McDonnell, 201 Mass. 341, 87 N. E. 624.

Reference to the provisions of that section discloses, however, that its salutary declaration that "the sender is deemed to have given due notice, notwithstanding any miscarriage in the mails," is explicitly limited in application to those cases "where notice of dishonor is duly addressed and deposited in the post office." Has the bank proved the mailing of a notice "duly addressed" to Berta Breitbart? The notary's certificate avers such a mailing, but the affidavit of nonreceipt (Code Civ. Proc. § 923) destroys even the prima facie force of that certificate and puts the plaintiff to its common-law proof (Dupont de Nemour v. Rooney, 63 Misc. Rep. 344, 117 N. Y. Supp. 220) of the seasonable mailing of a notice "duly addressed."

[2] The defendant indorser, in placing her signature upon the note in suit, "added an address," No. 169 Rivington street, and section 179 of the Negotiable Instruments Law requires that, where an address is stated on the instrument itself, "notice of dishonor must be sent to that address." Certainly a notice of dishonor otherwise addressed and not actually received cannot be said to have been "duly addressed," so as to secure for the bank the benefit of the conclusive presumptions created by section 176.

[3] In the case at bar, the notary testified, and his sworn certificate of protest averred, that he had made out and mailed notices of protest to both Maylich and Berta "Breitbart" addressed to each of them at No. 169 Rivington street. It developed, however, from the production of the same upon the trial, that the purported notice to the maker, as to which the notary made oath so confidently, was in fact addressed to "Bretbard" rather than "Breitbart," was plainly addressed to "162 Rivington street" rather than the address given on the note, and was not delivered to the addressee in the regular course of the mails at all, but was later handed to him, in an opened condition, by an unidentified boy of the neighborhood. Berta Breitbart testified that she never received any notice of protest, and had no knowledge of the receipt of any by her husband. In view of the notary's indubitable mistake in both his certificate and his testimony, as well as in both the address and· the name on the notice to Maylich Breitbart, it seems not at all improb-

able that the same or some other or greater mistake was made as to Berta Breitbart. No. 169 Rivington street was the residence of the latter and her husband, and was the husband's place of business. Without setting forth here the facts at greater length, I am obliged to conclude that the bank has not established that its attempted notice to Mrs. Breitbart was "duly addressed," in compliance with the law. It certainly has not convinced me that Mrs. Breitbart's denial is perjured or her nonreceipt of the notice improbable. Inability to show that the notice was sent to the indorser at the correct address relieves her from liability. Cuming v. Roderick, 28 App. Div. 253, 50 N. Y. Supp. 1053; Dupont de Nemour v. Rooney, 63 Misc. Rep. 344, 117 N. Y. Supp. 220; Montgomery Co. Bank v. Marsh, 7 N. Y. 481; Ebling Brewing Co. v. Reinheimer, 32 Misc. Rep. 594, 66 N. Y. Supp. 458; Siegel v. Dubinsky, 56 Misc. Rep. 681, 107 N. Y. Supp. 678; Bartlett v. Robinson, 39 N. Y. 187; Howard v. Van Gieson, 61 N. Y. Supp. 349, 46 App. Div. 77; University Press v. Williams, 48 App. Div. 189, 62 N. Y. Supp. 986.

[4] In determining this question, I have endeavored to make a careful examination of reported decisions in many of the 48 states and territories which have adopted the Negotiable Instruments Law, but I find no indication in other commonwealths of views at variance with those deducible from decided cases in this state. I have made this scrutiny of decisions under the parallel sections of the Negotiable Instruments Law in other states, because of the great public importance that this statute "shall be so interpreted and construed as to effectuate its general purpose to make uniform the laws of those states which enact it." Not only is this rule of interpretation of the so-called "uniform statutes" one which should be followed in all good faith by the courts whenever questions of the interpretation of such a statute are presented, but counsel in such cases should feel it as important and necessary to bring to judicial attention the corresponding decisions of sister states as those of the courts of this jurisdiction. Except where courts of this state have passed upon the same question, decisions of the courts of other states, interpreting identical provisions of "uniform statutes," should be accepted by our trial courts with the same authority as though rendered by our own tribunals. Unless both courts and counsel act with this mutual appreciation of the peculiar status of these "uniform statutes" and the salutary purposes sought in their enactment, it will hardly be possible to avoid that peril of conflicting adjudications by the courts of different states, based upon identical provisions of these uniform laws—a peril "that has the potency to reduce to wreckage the efforts of both (uniform law) commissioners and state Legislatures towards uniformity."

Judgment may be entered for the defendant Berta Breitbart. Submit findings on one day's notice.